# The Schuylkill Electric Railway Company, Appellant, *v.* The Government National Bank of Pottsville.

*Banks and banking—Corporation—Charging up worthless check—Ratification—Province of court and jury.*

In an action by a street railway company against a bank to recover the amount of a worthless check alleged to have been improperly charged against the plaintiff's account, there was evidence that the president of the company received a check for the amount in controversy from C., who testified that although the check was drawn to the president personally, the money was intended for the use of the company. There was no direct evidence that the money was so used. On the following day the president gave C. a check of a third party which C. deposited in the defendant bank where the street railway company also had an account. The check proved worthless, and the bank, upon the assurance of the bookkeeper and treasurer of the plaintiff that it would be protected, charged the amount of the check against the account of the plaintiff. Subsequently, in settlement between the plaintiff and its treasurer, and in three settlements between plaintiff and defendant, the validity of the charge was recognized and acquiesced in. *Held*, that the case was for the jury, and that a verdict and judgment for defendant should be sustained.

Argued Feb. 14, 1899. Appeal, No. 217, Jan. T., 1898, by plaintiff, from judgment of C. P. Schuylkill Co., July T., 1896, No. 324, on verdict for defendant. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover the amount of a worthless check alleged to have been improperly charged against the plaintiff's account. Before BECHTEL, J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[As bearing upon the rights of the parties, we say this to you : If you find that Thomas H. Connell gave to James Goodwin, who was then the president of the Schuylkill Electric Railway Company, a check for $4,000 on September 11, 1895, for the use and benefit of the said electric company, which was paid on the order of said Goodwin, and applied to the benefit of said electric company, and that said Thomas H. Connell received the check of W. W. Hess as a consideration of the check he gave Goodwin on September 12, 1895, for the same amount,

and that the Hess check was placed to the credit of Connell and the amount thereof applied to the payment of the Connell check on the order of Goodwin, for the use and benefit of the electric company, and that subsequently William A. Barritt, treasurer of the electric company, directed the Hess check to be charged to and paid out of the account of the electric company, then we think you should find in favor of the defendant, and we so say to you.] [1]

Defendant's first point and the answer thereto were as follows:

If the jury find that T. H. Connell, on September 11, 1895, gave to the Schuylkill Electric Railway Company his check on the Government National Bank of Pottsville, for $4,000, to be used for said company, and which said check James Goodwin, president of said company, made payable to his individual order, and being indorsed by him and deposited for collection was paid by the Government National Bank; and if the jury further find that the Schuylkill Electric Railway Company gave to said Connell, in exchange for his check, a check of W. W. Hess, to the order of T. H. Connell, dated September 12, 1895, on the Corn Exchange National Bank, for $4,000, which said check, after being deposited by said Connell, was protested for nonpayment on September 16, 1895, and if the jury further find that said check, amounting to $4,000, together with protest fees, $2.31, making a total of $4,002.31, was, subsequently, by direction of W. A. Barritt, Jr., treasurer of the said Schuylkill Electric Railway Company, charged to his account in said bank, and said check was surrendered to him when the bank book was settled, the plaintiff cannot recover in this case, and the verdict of the jury should be in favor of the defendant. *Answer:* We have in substance so stated to you. This we affirm. [2]

Plaintiff's fourth point and the answer thereto were as follows:

That in order to charge a party with the debt of another, the undertaking to do so must be in writing, and the check given by Hess to Connell, being no debt of the railway company and there being no written undertaking to pay said check by said railway company in writing, the Government National Bank had no right to deduct the amount of said Hess check from the account of the plaintiff, and the verdict of the jury must

be for the plaintiff.  *Answer:* This asks us to direct you to find a verdict in favor of the plaintiff.  We have heretofore said to you in this case that we are not prepared to do that, but that it is our purpose to leave you to say what your verdict shall be, and we cannot therefore affirm this point.  It is true that when one party seeks to make another liable for the debt of another, and the amount exceeds the sum of $20.00, he must have a writing or memorandum of writing, but we cannot say to you, under the evidence in this case, that this principle of law will prevent a verdict in favor of the defendant, or that it will not, because we think the facts of the case are not such as to enable us to make such statement to you as a matter of law. [3]

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*R. H. Koch* and *Guy E. Farquhar*, for appellant.—The railway company had not indorsed the Hess check; it had not agreed before protest to pay it; it had not agreed after protest to pay it, and, if it had so agreed, the company could not be held unless the agreement had been reduced to writing and signed by the proper officers of the railway company: Nugent v. Wolfe, 111 Pa. 471; Dougherty & Co. v. Bash, 167 Pa. 429; Maule v. Bucknell, 50 Pa. 39; Shoemaker v. King, 40 Pa. 107.

*S. H. Kaercher*, with him *D. W. Kaercher* and *Edward D. Smith*, for appellee.—That Hoellman was not a mere bookkeeper, but had large powers to bind the plaintiff company appears throughout the case, and it is submitted that the bank was justified in accepting his word that the Hess check was a company matter and that it would be protected.  Orders in blank, but signed by the proper officers, were left with Hoellman to be used in their absence.  Checks in blank, but signed by the treasurer, were placed in his hands.  In addition, Hoellman would take unsigned orders to the bank, have them cashed and treat them as in proper form, and subsequently he would have them signed by the officers of the company.  This was the course of dealing of the plaintiff with the defendant, with the knowledge

of and expressly sanctioned by the officers of the plaintiff. It now seeks to avoid a just liability by saying that the acts and declarations of its officers and agents do not bind the company. Hoellman was the messenger, through whom all messages were sent to the bank, all plaintiff's banking business was transacted through him, and in general he was invested with authority to transact the business of the company.

Since a corporation acts only through agents it is bound by its agent's contracts when made ostensibly within the range of their office. The authority of an agent to act for and bind his principal will be implied from the accustomed performance by the agent of acts of the same general character for the principal with his knowledge and consent: Brooke v. N. Y., Lake Erie & Western R. R. Co., 108 Pa. 529; McNeile v. Cridland, 168 Pa. 109; Smalley v. Morris, 157 Pa. 349; Keough v. Leslie, 92 Pa. 424; Caley v. R. R. Co., 80 Pa. 363; Hessner v. Helm, 8 S. & R. 178; Stubbs v. King, 14 S. & R. 206; Penn. Nat. Gas Co. v. Cook, 123 Pa. 170; Bascom v. Danville Stove & Mfg. Co., 182 Pa. 428.

The company acquiesced in the charge: Spangler v. Springer, 22 Pa. 454; Kellam v. Preston, 4 W. &. S. 16; Tams v. Lewis, 42 Pa. 402; Farmers' & Mechanics' Bank v. Third Nat. Bank of Pittsburgh, 165 Pa. 500; United Security Co. v. Bank, 185 Pa. 586.

OPINION BY MR. JUSTICE DEAN, April 24, 1899:

James Goodwin was president of the Schuylkill Electric Railway Company. On September 11, 1895, Thomas H. Connell delivered to him a check on the Government National Bank of Pottsville in amount of $4,000. The check was payable to Goodwin individually, and was drawn by Connell on his special account in the bank. Defendant alleged the check was given for the use of the Schuylkill Valley Railway Company. Goodwin deposited the check to his individual credit with the "Wayne Title and Trust Company," by which company it was in the usual course of business collected. Defendant further alleged this was a mere advance by Connell to the railway company, to be repaid him; accordingly on September 12, 1895, the day following the delivery of Connell's check to Goodwin, the latter delivered to Connell a check drawn by W. W. Hess to Connell's

order on the Corn Exchange National Bank of Philadelphia, in a like sum of $4,000 which Connell deposited with the defendant ; it was forwarded for collection, but payment was refused, and it was duly protested. · The defendant bank at once notified, not the drawer but the Electric Railway Company, this plaintiff, that payment had been refused ; whereupon, the railway company, by its bookkeeper, not denying its liability, assured the bank that it would be paid and the bank protected. While these transactions took place, Goodwin was president of the railway company, William A. Barritt, treasurer, and Charles H. Barritt, a director ; they were the active managers of the company, and controlled its affairs. When the check was protested, Hoellman, the bookkeeper of the company, notified both the Barritts of the fact, and after communicating with them, asked the defendant not to deduct the amount from the Electric Railway Company's balance, for if taken out then, the company would not have sufficient money to meet its pay roll. The bank acceded to this, and did not immediately charge up the check to the Electric Railway Company. Hoellman, not only at that time, but subsequently, assured the bank that it would be protected on the dishonered check. On September 19, five days after the protest, William A. Barritt, the treasurer, assured Connell the check would be taken up by the Electric Railway Company, and he then directed Hoellman to charge up the check on the books of the electric company to the account of himself and brother, and draw the order of the company on the bank for that amount ; in the treasurer's settlement, the Hess check entered into his account as a voucher without being disputed by the company ; it was also charged against the company's account, when its bank book was settled on October 1, about ten days thereafter. Immediately after this settlement, Barritt resigned as treasurer, and turned over all the papers of his office, including the dishonored Hess check, to his successor, who also had his account settled, on November 6, following, without any objection to the credit of the Hess check ; on December 3, following, the bank book was again settled without objection by the railway company. On December 27, the company notified the bank that the charge of the Hess check was unauthorized and on June 27, 1896, brought this suit against the bank to recover the amount of it with interest. There was much evidence on

both sides adduced at the trial; that of plaintiff tending to show that the Electric Railway Company was not legally a debtor to the bank in the amount of the Hess check, and that of defendant, that it was. The court below submitted the evidence to the jury in a most careful charge, in which it recalled to their attention nearly all the testimony, and then instructed them : (1) If Connell gave to President Goodwin his check for $4,000 to be used for the benefit of the Electric Railway Company, and in the course of its business the check was so used ; and then the Hess check, in consideration of this advance or loan, was delivered to Connell by Goodwin, and the company afterwards in its transactions with the bank recognized the Hess check as an obligation of its own, and the treasurer of the company directed the bank to charge the Hess check as its own, they should find for defendant; on the other hand, (2) if they found that the bank charged the Hess check to the Electric Railway Company without authority of the treasurer or of the company, the charge was illegal, and they should find for plaintiff ; or, (3) if they found that the proceeds of the Connell check passed to Goodwin, and were not subsequently used for the benefit of the Electric Railway Company, they should find for plaintiff.

There was a verdict for defendant, and we have this appeal by plaintiff, with three assignments of error. They all, in effect, raise the question, whether there was evidence sufficient to warrant the jury in finding that the check given by Connell to Goodwin was for the use of the railway company, and whether the company received the benefit of it. Unquestionably, if Connell was believed, he gave this check to Goodwin, the president of the railway company, for the use of that company. It is immaterial, that the payee in the body of the check was not named "Railway Company," or Goodwin "president." The money was paid Goodwin on the check, and then, as concerned the railway company and Connell, they were in precisely the same relation as if Connell had handed Goodwin $4,000 in bank bills to be used for the benefit of the railway company.

As to the authority of Goodwin, as agent of the company, to thus borrow money for his principal, it may well be doubted, whether express precedent authority was given or could be fairly inferred from the evidence. That on occasions he had thus borrowed money for the company, would not be sufficient to

warrant an inference of such general and large powers. But, however this may be, it is not a question fairly raised in this case, nor under instructions did the issue turn upon it. The jury, in defendant's first point, was explicitly directed, that to render a verdict for defendant, they must not only find, that Connell delivered the check to Goodwin for the use of the railway company, but that it was also applied to that purpose. There is no evidence that the money was directly so used. It may be that Goodwin, as plaintiff alleged, did not pay out for the company precisely that money. But there was evidence that the company recognized and ratified his act of borrowing by delivering to Connell the Hess check, and actually paying it. The evidence is ample to the effect that W. A. Barritt, the treasurer, lifted the check for the company, took credit for it in his account as treasurer in settlements with the company, without objection. No less than three settlements were made by the bank with the company, in which the latter had full knowledge that the Hess check was charged against it, and no protest was made. This was not only knowledge that the Hess check was given in payment of Connell's check, but, by its settlements with the bank and its own treasurer, it was actual payment out of the company's funds. In substance, this suit is to recover back money paid by alleged mistake. Not until months after the transaction, after Barritt, the treasurer, had gone out of office and left the state was there objection; after a new treasurer had recognized the correctness of the charge in his settlements with the bank, the president of the railway company objected to it. While these settlements and this delay might not of themselves bar plaintiff's claim, they were certainly evidence tending to show Goodwin's authority to receive the Connell check for the company and to hand over in payment therefor, the Hess check; it went further, and tended to show, inferentially, that the company had the benefit of the money received by Goodwin; for why recognize it in frequent settlements as a company obligation, if Goodwin had alone received the benefit of it? We concede the full force of appellant's argument, that a bank cannot charge against its customer the check of a third party, without the assent or authority of the customer; but the question of authority is the very fact at issue, and we are clear there was evidence on part of defendant which demanded the submission of that question to the jury.

The cases cited by appellant which decide that the principal is only bound by the acts of his agent when within the scope of his authority, and that such authority must be expressly shown; that it will not be inferred from occasional acts of the same nature, recognized by the principal, are not doubted; they do not, however, reach the facts of this case. Here, there was evidence that the principal, by the most significant acts, did ratify the action of Goodwin, and adopt it as its own. The court below could not have properly done otherwise than submit the case to the jury. We find nothing in any of the assignments of error that would warrant a reversal; therefore the judgment is affirmed.